UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DONALD M., | ) | |
| | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | 2:20-cv-00364-JDL |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) | |
| | ) | |
|    Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the December 11, 2019 decision of the

Administrative Law Judge. (ALJ Decision, ECF No. 13-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of diabetes mellitus with neuropathy of the lower extremities and degenerative joint disease of the right ankle, status-post open reduction and internal fixation. (R. 18.) The ALJ further found that, despite his impairments, Plaintiff has the residual functional capacity (RFC) to perform light work, except that he can stand and/or walk for six hours and sit for eight hours in an eight-hour workday; during winter months, Plaintiff must use a cane for ambulation when outside for distances greater than two city blocks (400 yards); he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; and he can never be exposed to dangerous machinery, hazardous heights, excessive vibrations, extreme cold, or extreme heat, but may occasionally be exposed to wetness, but never in excessive amounts; and is unable to perform commercial driving. (R. 25.)

Based on the RFC finding, the ALJ concluded that Plaintiff could return to his past relevant work as a cashier. (R. 27.) In the alternative, considering the Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other substantial gainful activity, including the specific representative jobs of call out operator, mail sorter, and furniture rental clerk. (R. 28.)

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that (1) the RFC is not supported by substantial evidence; and (2) the ALJ failed to address sufficiently the post-hearing affidavit of a vocational expert.

### A. RFC

Plaintiff contends the ALJ's RFC finding is not supportable because the ALJ relied in part on the opinions of the state agency medical consultants who reviewed an incomplete record and because the ALJ exceeded her competence as a layperson in interpreting raw medical data.

    1. <u>Status of the Medical Record</u>

Plaintiff sustained a fracture of his right ankle in 1994. (R. 407.) He underwent an open reduction and internal fixation of his right ankle to repair the fracture. (R. 411-18.)

3

Relevant to Plaintiff's argument, in May 2019, Plaintiff saw orthopedist James Timoney, D.O., who noted mild edema, ecchymosis and swelling of Plaintiff's right ankle, with diffuse tenderness across the ankle joint, negative external rotation and restricted active and passive range of motion. (R. 407-10.) Dr. Timoney reviewed a May 2019 x-ray of the ankle, finding "relatively severe degenerative changes of the ankle." (R. 409.) He further noted that the x-ray "seem[ed]" to indicate some impaction of the talus with anterior osteoarthritis preventing motion. (*Id.*) Dr. Timoney also observed that there "seem[ed] to be impingement both medially and laterally at the mortise …." (*Id.*) He diagnosed Plaintiff with post traumatic ankle arthritis and prescribed a solid right Ankle Foot Orthosis (AFO) brace, and discussed potential surgical options, including arthrodesis ankle fusion. (*Id.*)

During a follow-up appointment with Dr. Timoney in June 2019, Plaintiff reported some improvement with use of the AFO, but that it needed to be adjusted for comfort. (R. 405-406.) He also told Dr. Timoney that he gets occasional "zinging" pain that starts from his right big toe and radiates into the dorsum of his foot. (*Id.*) Upon examination, Dr. Timoney noted some irritation from the AFO at the anterior inferior edge and no impingement. (Id.) Dr. Timoney observed that the brace seemed to have helped with ambulation and daily function. (*Id.*)

At the administrative hearing, Plaintiff testified that his ankle is in constant pain and swells when he stands or walks. (R. 52.) He reported that Dr. Timoney recommended that Plaintiff wear the AFO for three to five years, and, if the brace does not sufficiently address the condition, that Dr. Timoney "wants … to do an ankle fusion." (*Id.*)

In her assessment of Plaintiff's RFC, the ALJ found the opinions of state agency

4

medical consultants, Donald Trumbull, M.D. and Benjamin Weinberg, M.D., persuasive in part. (R. 25-26.) Dr. Trumbull issued his opinion in October 2018; Dr. Weinberg issued his opinion in March 2019. (R. 74, 86.) Neither Dr. Trumbull nor Dr. Weinberg had the opportunity to review the x-ray results or Dr. Timoney's records before they issued their opinions because the records were generated after they completed their assessments.

In her decision, the ALJ acknowledged that the x-ray "revealed relatively severe degenerative changes of the ankle, with some impaction of the talus with anterior posterior osteophytes preventing motion, with impingement both medically and laterally at the mortise." (R. 22.) The ALJ also noted the discussion of potential surgical options, but emphasized the discussion of "conservative treatment options," including activity modification, oral anti-inflammatories, and use of the AFO brace. (*Id*.) The ALJ further observed that the brace helped Plaintiff with ambulation and daily function. (*Id*.)

Generally, "a DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted [that] call[s] the expert's conclusions into question." *Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008). An ALJ may, however, rely on experts' reports despite later-submitted evidence when the new evidence "does not call into question their conclusions." *Emily A. v. Saul*, No. 2:19-cv-00071-JDL, 2020 WL 2488576, at *7 (D. Me. May 14, 2020). Where the unseen portions of the record "are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the ALJ," there is no material change in the record evidence that would call a consultant's conclusions into question. *Id*. (citing *Robert L. v.*

5

*Berryhill*, No. 1:17-cv-00348-JDL, 2018 WL 3599966, at *6 (D. Me. July 27, 2018)).

Although when assessing a claimant's RFC an ALJ is not required to call a medical expert, *see Hallock v. Astrue*, No. 2:10-cv-00374-DBH, 2011 WL 4458978, at *2 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Feb. 28, 2010), an ALJ may not substitute her judgment for that of an expert, nor translate raw medical data into an RFC assessment. *See, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 67 F.3d at 16. An ALJ, however, "is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by … judging whether later submitted evidence is material …." *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6, n.5 (D. Me. Jan. 17, 2011). In other words, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts." *Rodriguez*, 647 F.2d at 222.

Whether the opinions of the state agency consultants can constitute substantial evidence to support the ALJ's RFC determination depends on the significance of the 2019 x-ray and Dr. Timoney's findings. The issue, therefore, is whether the ALJ has the requisite expertise to assess the x-ray results and Dr. Timoney's findings without further expert evidence.

While an ALJ is competent in some cases to assess certain medical records, including the results of radiographic studies, performed after state agency consultants prepared their reports, in this case, given the lack of a prior x-ray report to which the ALJ compared the 2019 x-ray results, given that Dr. Timoney interpreted the x-ray as revealing severe degenerative changes in the ankle among other apparently notable findings, and given that Dr. Timoney identified further surgery as a possible option based on his

6

interpretation of the x-ray and his examination of Plaintiff, the significance of the 2019 x-ray and how the condition reflected by the x-ray compares with the medical evidence reviewed by the agency consultants would be beyond the scope of a layperson. That is, under the facts of this case, the ALJ lacks the expertise to determine whether the results of the x-ray and Dr. Timoney's findings are "merely cumulative or consistent with the pre-existing record." Without expert evidence addressing the results of the x-ray and Dr. Timoney's findings, the evidence "calls into question" the opinions of the state agency consultants. *Eaton*, 2008 WL 4849327, at *5. Remand, therefore, is warranted.

2. Use of Cane

Both Dr. Trumbull and Dr. Weinberg opined that while Plaintiff could stand and/or walk for about six hours in an eight-hour workday, a "medically required hand-held assistive device is necessary for ambulation." (R. 73, 85.) Each further clarified that "cane use [was] appropriate for community ambulation during flares." (R. 73, 85-86.) Plaintiff contends that the ALJ erred when she found that Plaintiff only required a cane when walking outside during winter for distances greater than 400 yards. (R. 20.)

Based on Plaintiff's testimony, the ALJ assessed an RFC that included a narrower limitation than suggested by Dr. Weinberg.[2] (R. 25.) Plaintiff acknowledges that there is no error when an ALJ credits a claimant's own testimony. *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116, at *8 (D. Me. Sept. 22, 2017) (rec. dec. aff'd Mar. 28,

---

[2] With respect to Dr. Trumbull's opinion, the ALJ stated that she found it persuasive in part, though less persuasive that Dr. Weinberg's, and noted that it shared "some of the inconsistencies noted in the findings of Dr. Weinberg." (R. 26.)

7

2018).

Plaintiff testified that a cane was bought for him in December 2018 because he has "trouble in the wintertime getting up and down a lot." (R. 55-56.) The cane was not prescribed by a medical provider. (R. 55.) He also testified that he had not used it "all that much" in the summertime because it had not "been too bad to get up and down." (R. 56.) He said that "now that it is getting back towards winter again, I will be using it more often." (*Id*.) When questioned by counsel if he used it outside, Plaintiff responded, "Yes." (*Id*.) When asked if he needed it inside, Plaintiff said, "Not per se, but I like to have it just in case." (*Id*.) Given Plaintiff's testimony, the ALJ's finding is supported by substantial evidence.

3. Balancing

Plaintiff argues that the ALJ erred because her RFC includes only occasional balancing, which is inconsistent with her finding that Plaintiff could perform jobs at the light work exertional level.

Social Security Ruling 83-10 defines light work, in part, as requiring the ability to walk or stand "a good deal," and defines "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. Plaintiff contends that the ability to balance is necessarily required to walk or stand, and if Plaintiff can only occasionally balance, he cannot therefore perform the jobs identified by the vocational expert, nor indeed any job at the light exertional level. (SOE at 10-11.) Plaintiff notes that the Department of Labor's Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SOC/DOT) defines "balancing" as "[m]aintaining body

equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic feats." SOC/DOT, App. C at C-3. Plaintiff also points to Social Security Ruling 96-9p, which states that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185, at *7.

First, a plain reading of the SOC/DOT reveals that the balancing limitation applies to "narrow, slippery, or erratically moving surfaces." Light work does not require an individual to work on such surfaces. In addition, SSR 96-9p, upon which Plaintiff relies, applies to sedentary, rather than light, jobs. According to the Ruling, if "an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base." *Id*. As one court observed, SSR 96-9p "does not say that occasional balancing in the normal course of walking or standing would be precluded." *Mort v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-00032-JTK, 2021 WL 372537, at *2 (E.D. Ark. Feb. 3, 2021). Consistent with this assessment, multiple courts have upheld light work RFCs that include a limitation to occasional balancing. *Id.* (citing *Markey v. Berryhill*, No. 6:16-cv-06051, 2017 WL 2560018 (W.D. Ark., June 13, 2017); *Phelps v. Astrue*, No. 4:11CV1362MLM, 2012 WL 2885378 (E.D. Mo. July 13, 2012); *Archuleta v. Astrue*, No. EP-10-CV-00194-RFC, 2011 WL 3684815 (W.D. Tex. Aug. 22, 2011)). *See also, e.g.*, *Murwin v. Astrue*, No. 1:11-cv-376-DBH, 2012 WL 2923535 (D. Me. June 30, 2012) (rec. dec. aff'd July 18, 2012); *Terrault v. Astrue*, No. 09cv11390-NG, 2011 WL 613701 (D. Mass. Feb. 11, 2011); *Puig*

*v. Astrue*, No. 08-cv-253-JD, 2009 WL 1096500 (D. N.H. Apr. 21, 2009). In short, Plaintiff's interpretation of "balancing" as encompassing the ability to remain upright on level terrain is unconvincing and remand based on the balancing requirement is not warranted.

**B. David Meuse Affidavit**

Plaintiff argues that remand is required because the ALJ's discussion of a post-hearing affidavit does not establish that the ALJ properly considered the affidavit.

Following the administrative hearing, Plaintiff submitted an affidavit from David Meuse, a vocational rehabilitation consultant. (R. 265-66.) Mr. Meuse opined that a person of Plaintiff's weight (300 pounds, according to Plaintiff (R. 57)) would require an accommodation in the form of an oversize, or "bariatric," chair for all sedentary work and any light work where the employee did not spend the entire 8-hour workday standing and/or walking. (R. 265 ¶¶ 9-10.) Mr. Meuse also asserted that most workplaces would not provide chairs to accommodate an individual of Plaintiff's weight. (R. 265-66 ¶¶ 11-12.) The ALJ discussed Mr. Meuse's affidavit:

> While this document has been considered, the undersigned remains unpersuaded by it. First, the undersigned is satisfied with the vocational expert's … experience in the field of vocational rehabilitation and job placement, and notes that counsel did not object to the vocational expert's qualifications. The vocational expert testified that the jobs he provided were consistent with the claimant's [RFC] and the DOT. The evidence of record does not support a finding that the claimant requires an accommodation of a special chair due to his nonsevere obesity. For example, the claimant's medical providers failed to note that the claimant's obesity necessitated a bariatric chair or other special accommodation based on his weight or body habitus.

(R. 29.)

10

The ALJ then noted that, even if the claimant required a special chair, pursuant to Social Security Ruling 11-2p, the accommodation is not part of the assessment of whether jobs exist in the national economy:

> When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990.

SSR 11-2p II.D.1.e. (R. 29.)

Defendant acknowledges that the ALJ's reasoning in rejecting Mr. Meuse's opinions was not sound.[3] (Opposition at 15.) Defendant argues, however, that any error was harmless because it does not undermine the ALJ's finding that Plaintiff could return to his past relevant work as a cashier. Defendant maintains that because Plaintiff did not claim that he could not return to such work due to the lack of a chair to accommodate him, he has not met his burden to establish that he could not return to his past relevant work. Defendant cites this Court's decision in *Maietta v. Berryhill*, No. 2:17-cv-00054-NT, 2017 WL 4387365 (D. Me. Oct. 2, 2017), in support of his argument.

In *Maietta*, the only evidence to support the plaintiff's contention that he needed a

---

[3] As Defendant noted, the ALJ's positive view of the testifying vocational expert's qualifications does not support the rejection of the Meuse affidavit. In addition, the ALJ's finding that the record lacks evidence that Plaintiff required a bariatric chair is unsupportable as Mr. Meuse's affidavit itself provides that evidence. *See Joshua B. o/b/o Travis D. B. v. Saul*, No. 19:cv-00436-LEW, 2020 WL 6376639, at *5 (D. Me. Oct. 30, 2020) (rec. dec. aff'd. Dec. 16, 2020). Finally, with respect to SSR 11-2p, an ALJ cannot assume that an employer will provide an accommodation when determining whether relevant jobs exist in the national economy in significant numbers to support a step 5 finding. *See, e.g., Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996); *Jones v. Apfel*, 174 F.3d 692, 692 (5th Cir. 1999); *but see Higgins v. Comm'r, Soc. Sec. Admin.*, 898 F.3d 793, 796 (8th Cir. 2018) ("ALJs may properly rely on VE testimony that a certain needed modification is part of the functional workplace…. as it actually exists.").

bariatric chair was his own testimony that he could not sit in regular office chairs with arms or sides. 2017 WL 4387365, at *3. The Court found that the ALJ "was not required to draw an inference that the plaintiff required a larger chair; rather it was the plaintiff's burden to prove that he did." *Id*. Here, unlike in *Maietta*, Plaintiff provided evidence, in the form of Mr. Meuse's affidavit, that he requires a bariatric chair during the portion of the workday he is not standing or walking. Pursuant to the ALJ's RFC, which forms the basis of the vocational expert's testimony and the ALJ's determination that Plaintiff can perform the past relevant work as a cashier, Plaintiff can stand or walk for up to six hours. Plaintiff, therefore, must sit for parts of the workday. A reasonable inference from the Meuse affidavit is that most businesses employing a cashier would not have a chair to accommodate Plaintiff. Contrary to Defendant's argument, therefore, Plaintiff has presented evidence that would support a finding that he cannot return to his past relevant work. As explained above, the ALJ's reasons for discounting the Meuse affidavit are not supportable and, therefore, the ALJ did not adequately consider the affidavit. Accordingly, even if the ALJ's RFC determination were supportable, remand is required.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

(14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

         /s/ John C. Nivison
         U.S. Magistrate Judge

Dated this 24th day of June, 2021.